IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL HALL,

           Plaintiff,

vs.                                      Case No. 13-1379-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

           Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

## I. General legal standards

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On May 6, 2013, administrative law judge (ALJ) Christina Young Mein issued her decision (R. at 34-41). Plaintiff alleges that he had been disabled since March 15, 2011 (R. at 34). Plaintiff meets the insured status requirements for social security disability benefits through March 31, 2014 (R. at 36).

At step one, the ALJ found that plaintiff did not engage in substantial gainful activity after the alleged onset date (R. at 36). At step two, the ALJ found that plaintiff had severe impairments of fibromyalgia and chronic fatigue syndrome (R. at 36). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 37-38). After determining plaintiff's RFC (R. at 38), the ALJ determined at step four that plaintiff is able to perform past relevant work as a sales representative and an automotive salesperson (R. at 41). Therefore, the ALJ concluded that plaintiff was not disabled (R. 41).

**III. Are the ALJ's RFC findings supported by substantial evidence?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530

n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence.  See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence.  Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003).  It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions.  Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995).  When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination.  Such bare conclusions are beyond meaningful judicial review.  Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

The ALJ found that plaintiff has the capacity to perform light work, lift and carry up to 20 pounds occasionally, and 10 pounds frequently. Plaintiff can stand, walk, or sit for up to 6 hours of an eight-hour workday. He can stoop, kneel, and crouch frequently, and occasionally crawl and climb ladders, ropes, or scaffolds. However, he must avoid concentrated extreme cold and heat, unprotected heights, and hazardous machinery (R. at 38).

Although the ALJ did not indicate the basis for his RFC findings, his RFC findings are identical to the RFC findings of Dr. Raju (R. at 158-161). It is therefore clear that the ALJ gave great weight to the opinions of Dr. Raju in making his RFC findings.

The first issue the court will address concerns the opinions of Dr. Koeneman, a licensed psychologist. Dr. Koeneman prepared a mental status examination after examining plaintiff on December 6, 2011 (R. at 432-434). He stated that despite the presence of anxiety disturbances, the exam did not reveal the presence of psychological difficulties that would preclude him from obtaining and maintaining employment. He appears capable of getting along with coworkers and supervisors, making adequate work related decisions, **and sustaining his concentration on simple tasks over a normal 8-hour workday**. He displayed adequate social behaviors during this examination and appears

7

capable of applying this potential to a work environment.  He is also capable of managing his own finances (R. at 434, emphasis added).  The ALJ stated that he gave "meaningful weight" to this report and "validated" his opinions (R. at 40).

In his RFC findings, the ALJ did not include any mental limitations; he specifically did not include any limitation to "simple" tasks, as indicated by Dr. Koeneman.  The ALJ offered no explanation for failing to include this limitation in his RFC findings.  Defendant argues that the failure to include this limitation noted by Dr. Koeneman was a "technical" omission, and that the phrase "simple" tasks appeared to be merely a statement that plaintiff could at least do that, if not more.  However, Dr. Koeneman did not state that plaintiff could at least do simple work, if not more.  The court will not read into Dr. Koeneman's opinion more than what is stated in the report.

As set forth above, if the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  The ALJ failed to do that regarding the opinion of Dr. Koeneman that plaintiff could sustain his concentration on "simple" tasks over an 8-hour workday.  The court finds that the failure to include this limitation in the RFC findings, or to provide an explanation for not including this limitation, cannot be deemed a technical failure or harmless error.

The ALJ went on to find that plaintiff could perform past relevant work as a sales representative and an automotive salesperson (R. at 41).[1]  The vocational expert (VE) had identified these jobs as jobs that plaintiff could perform with the RFC limitations set forth by the ALJ (R. at 64-65).  The job of sales representative (DOT code 279.357-034), and the job of sales representative, motor vehicles (DOT code 273.357-022) have a reasoning level of four (1991 WL 672469, 672543; <u>Dictionary of Occupational Titles</u>, 4th ed. 1991, at 227, 231).

Plaintiff contends that the past relevant jobs identified by the ALJ as jobs that he could perform would be precluded by a limitation to "simple" tasks (Doc. 12 at 22).  In the case of <u>Hackett v. Barnhart</u>, 395 F.3d 1168 (10th Cir. 2005), plaintiff was limited by the ALJ to "simple and routine work tasks."  The court stated that this limitation seems inconsistent with the demands of level-three reasoning.[2]  The ALJ had found that plaintiff could perform the jobs of surveillance-system monitor and a call-out operator.  The court noted that the <u>Dictionary of Occupational Titles</u> (DOT) states that a surveillance-system monitor and a call-out operator position requires level three reasoning.[3]  Thus, the court remanded the case to address the

---

[1] The ALJ did not discuss whether or not plaintiff could perform other work in the national economy at step five.
[2] The court indicated that level-two reasoning seemed more consistent with simple and routine work tasks.  395 F.3d at 1176.
[3] The DOT has six levels of reasoning.  Level one is the simplest level of reasoning, stating that it only requires the ability to apply commonsense understanding to carry out simple one-or-two step instructions, and to deal with

apparent conflict between plaintiff's inability to perform more than simple and routine work tasks and the level-three reasoning required by the jobs identified as appropriate for her by the vocational expert (VE).  395 F.3d at 1172, 1176.

In the case of Randolph v. Colvin, 2014 WL 4930547 (N.D. Okla. Oct. 1, 2014), Dr. Garner reported that the plaintiff could "concentrate and persist on simple tasks during a normal work day."  The ALJ found that plaintiff could "carry out simple and some moderately complex instructions."  The ALJ failed to explain why he did not adopt the opinions of Dr. Garner.  The court held that the jobs identified by the VE did not correlate with the limitations of Dr. Garner, and that the ALJ therefore erred by failing to either include the limitation, or provide a legally sufficient explanation for not including the limitation.  2014 WL 4390547 at *3.

The two jobs identified by the VE and the ALJ as the only past relevant jobs that plaintiff could perform require level four reasoning, an even higher level of reasoning than was required for the jobs identified by the ALJ in Hackett as jobs that the claimant in that case could perform.  For this reason, the failure to either include a limitation to "simple" tasks, or provide a legally sufficient explanation for not including this limitation, cannot be deemed harmless error.  This case shall

---

standardized situations with occasional or no variables. Level six is the highest level of reasoning. DOT at 1010-1011.

therefore be remanded in order for the ALJ to either include the limitation to "simple" tasks, as contained in the report of Dr. Koeneman, or, in the alternative, provide a legally sufficient explanation for not including the limitation.  On remand, the ALJ should consider whether any other mental impairments or limitations should be included in the ALJ's RFC findings, but the court would note that the ALJ, in the absence of any other medical opinion evidence, could reasonably rely on the medical opinions of Dr. Koeneman regarding the nature and extent of plaintiff's mental limitations.

Second, plaintiff argues that the ALJ erred in giving only minimal weight to the opinions of plaintiff's treating physician, Dr. Arano. Dr. Arano signed a fill-in-the-blank form, stating that plaintiff could stand for 30 minutes at one time, but could not stand at all in a workday.  Plaintiff was also found to be able to sit for 4 hours at one time, but could only sit for 2 hours in a workday (R. at 475).  The ALJ stated that the opinion was inconsistent on its face and not reconcilable with itself or the evidence of record.  The ALJ also noted that the fact that plaintiff works part-time as a laborer does not support the limitations by Dr. Arano (R. at 40).

The report is in fact inconsistent and not reconcilable. Dr. Arano stated that plaintiff can stand for 30 minutes, but then states that plaintiff could not stand at all in a workday.

He goes on to state that plaintiff can sit for 4 hours at a time, but can only sit for 2 hours in a workday.  Dr. Arano offers no explanation for these findings that appear contradictory on their face.  A treating physician's opinion can be rejected if it is brief, conclusory, and unsupported by medical evidence.  <u>Williamson v. Barnhart</u>, 350 F.3d 1097, 1099 (10th Cir. 2003); <u>Bernal v. Bowen</u>, 851 F.2d 297, 301 (10th Cir. 1988); <u>Frey v. Bowen</u>, 816 F.2d 508, 513 (10th Cir. 1987).  It is not unreasonable for the ALJ to find that these brief and conclusory opinions, which offer no explanation for opinions which appear to be contradictory on their face, should be given little or no weight.

Plaintiff argues that the ALJ should have recontacted Dr. Arano for clarification (Doc. 18 at 1).  However, under the regulations, effective March 26, 2012, it states that when the evidence is inconsistent, or insufficient to determine if a claimant is disabled, the ALJ may take a number of options, one of which is that the ALJ "may" recontact the treating source.  20 C.F.R. 404.1520b(c); 77 FR 10651.  The regulations do not require the ALJ to recontact a medical source when his or her report appears to be inconsistent on its face; therefore, the court finds that the ALJ did not err by failing to recontact Dr. Arano.

Furthermore, plaintiff reported to Dr. Koeneman in December 2011 that he is currently working approximately 20-25 hours a week as a laborer for his brother's company, and has been so employed for 4 months (R. at 433). This fact clearly undermines the opinion of Dr. Arano that plaintiff cannot stand in a workday, and can only sit for 2 hours during a workday. Substantial evidence supported the determination of the ALJ that the opinion of Dr. Arano was entitled to minimal weight.

As noted above, the ALJ clearly relied on the opinions of Dr. Raju in support of his physical RFC findings. Dr. Raju's report included a narrative discussion of the evidence and the basis for his opinions (R. at 160). The court finds that substantial evidence supports the ALJ's physical RFC findings.

**III.  Did the ALJ err in his credibility analysis?**

Plaintiff argues that the ALJ erred in his credibility findings regarding plaintiff's allegations. The court will not address this issue in detail because it may be affected by the ALJ's resolution of the case on remand after the ALJ considers whether to include the limitation to "simple" tasks in her RFC findings. See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004). However, the court does not find any clear error in the ALJ's credibility analysis, which included the fact that plaintiff had been working 20-25 hours a week.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 25th day of February 2015, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge